No. 693 July 22, 2026 653

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHARY MICHAEL LOBUE,
*Defendant-Appellant.*

Lane County Circuit Court
24CR04306; A185667

Stephen W. Morgan, Judge.

Submitted April 7, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

In this criminal appeal, defendant challenges his convictions for first-degree burglary, ORS 164.225, and aggravated first-degree theft, ORS 164.057. He raises three assignments of error in which he claims that the trial court erred in (1) denying his motion for substitution of counsel, (2) denying his renewed motion for substitution of counsel, and (3) denying his requested witness-false-in-part instruction. Because we agree that the trial court erred in denying the initial substitution motion, we do not reach the second or third assignments of error. We reverse and remand.

## BACKGROUND

The relevant facts are procedural and highly intertwined with the facts related to defendant's motion for a continuance of trial.

Defendant was initially charged by information, and counsel was appointed for him in mid-May 2024 on the day of his first arraignment. Due to a conflict, new counsel was appointed on May 30, 2024. An indictment was then secured, and defendant was arraigned on it on June 6, 2024. The state completed its discovery to the defense on June 27, 2024. Trial was scheduled for July 5, 2024. On July 2, 2024, at defendant's request, the court postponed trial to September 4, 2024, to provide time to prepare.

On September 3, 2024, the day before trial, defendant again moved to postpone trial. In that motion and a supporting declaration, counsel stated that his case investigation remained "incomplete" and that he had been unable to prepare for trial for various reasons:

> "[D]ue to my trial schedule and other factors which are not all court related, I have not been able to prepare this case for trial, including but not limited to having sufficient time to meet with and prepare with [defendant] for trial after his release [from pretrial custody], time to prepare and file motions, time to subpoena witnesses, and time to perform other essential defense functions in this case."

Counsel explained that "discovery from the State was delayed significantly" but that "[a]s investigation has progressed[,] it has proved fruitful, and additional time to

investigate this case is needed" and similarly stated in his declaration that the investigation "is not, and will not be, completed by September 4, 2024" as "[p]otentially essential defense witnesses" had been identified but not contacted and "there remains productive investigation to perform on this case."

On September 4, 2024, the day scheduled for trial, the parties spoke with the court in chambers and then appeared on the record. Defense counsel orally asked to postpone trial, stating, "I reiterate that the defense is not ready to proceed to trial. There is necessary investigation that has not yet been concluded." He noted that defendant had also expressed "concerns related to trial readiness and the [attorney-client] relationship." Defense counsel informed the court that defendant had instructed him to move to withdraw in the event that a continuance was denied.

The trial court weighed the state's and defendant's interests regarding a continuance and, after noting that the complainant had flown across the country twice to attend proceedings, explained:

"[W]e'd had the conversation [in chambers] on really just kind of weighing the prejudice to both parties about making the trial go forward or postponing the trial. The state has an essential witness who lives out of state and cross country.

"The defense has—and I respect without question and accept without question the defense's representation that it's real investigation to be done. That there is a witness, I think the co-defendant, who [was] not willing to talk to any investigators before but may be willing to do it now and that [defense counsel] is in the process of getting approval from OPDC to have the investigator go and do that extra work.

"Kind of what we had talked about back in chambers is that those two things are true legitimate concerns that have to be balanced."

The court expressed concern about the heavy burden placed on the complainant, requiring repeated flights to Oregon just "to participate in the justice system." Defense counsel emphasized that defendant was facing a "very

significant potential \*\*\* sentence here," that there had been relatively little time to prepare for trial, and that the failure to seek a continuance before the named victim flew to Oregon for trial was counsel's fault and not defendant's:

"I think the record does need to reflect the length of time that the defense has had discovery in this case at this point is less than three months. \*\*\*.

"Given the severity of the case and the short timeframe that we are working on, we've worked diligently to investigate this case. And I would submit that it is not a reasonable length of time for the Court to be forcing us to go forward when we have real and legitimate investigation yet to (indiscernible).

"I respect the \*\*\* alleged victim's schedule, and \*\*\* I will take personal responsibility for the fact that I did not communicate with [the state] about the impending need for this postponement sooner, which could have avoided the expense of this particular trip to Lane County; \*\*\* that is solely on me. It is related to other issues, related to the, frankly, the workload \*\*\* that I have, the court-appointed cases \*\*\* that I take on, and the fact that for whatever reason, a whole lot of cases that I've had have been right up at the end point over the past three, four weeks. So that I take responsibility for.

"I don't think that should cause [defendant] to have to go forward, potentially facing years in prison when \*\*\* the defense has had a very short period of time relative to the severity of the case, and [defendant] has \*\*\* been willing \*\*\* to accommodate the need for time to do necessary investigation.

"And frankly, I think—and I would strongly urge the Court to grant this postponement. \*\*\* I'm perfectly happy to work with whatever scheduling needs to be worked with, move whatever other cases, whatever other things that need to be moved to accommodate and lessen, mitigate the impact to this \*\*\* alleged victim here.

"\*\*\*\*\*

"I don't think that [defendant] \*\*\* should have this fall upon him when he has been appropriate and cooperative, both with the process and with my investigator and has been working with my investigator who has been diligently

working on this case, trying to get it ready. And we just simply have not been able to get it *** ready.

"And I think the other issue here, potentially, I mean, this is a witness who's willing to speak to us now and could have very material and important information. ***.

"*****

"So, Your Honor, I would reiterate my motion and again urge the Court to grant a postponement. I'll drop any concerns about my availability with respect to this. If the Court orders me to go to trial on this whenever, I will do it, but we're not ready today."

The trial court denied the motion to postpone, largely reasoning that the benefit of further investigation was speculative while, on the other hand, the burden on complainant to fly across the country again for another trial was certain:

"THE COURT:   Yeah. I mean the big piece of investigation is the co-defendant changing his mind and being available. ***.

"*** They've changed their mind. They could change their mind again, right?

"In my mind, we have an actual prejudice that the victim, the named victim, is facing and an actual risk of prejudice of that that person just may not be available in the future. And we have a potential investigatory avenue that—and I don't doubt [defense counsel's] diligence, and I agree with him on the timeline as far as when he was appointed to the case, but the co-defendant has been known the entire time and their mind changed.

"So I think *** even if they do talk to an investigator, even if they do say things that are favorable to [defense counsel], and even if that is credible and doesn't make things worse because, frankly, co-defendants, in my experience, are 50-50 as far as when they say helpful things, whether it's actually helpful or harmful to the person that they are thinking they're helping, that's a potential prejudice. So the motion to postpone will be denied."

Upon receiving that ruling, defendant personally moved for substitution of counsel, explaining that he had

not had an adequate opportunity to meet with his attorney and prepare for trial, and the court denied that motion too:

> "THE DEFENDANT: I haven't even seen—I haven't seen [defense counsel] (indiscernible) since I've been appointed counsel outside of the courtroom. And I have contacted (indiscernible) waiting for him out front of his office. I've been down to the courthouse to talk to him (indiscernible). I was told I could not file that on my own, that he needed to file it.

> "These are things that haven't happened. I haven't had any discussion with him about what's going on strategy-wise. I'll pay for the plane ticket. Because, like, *** I'm dead serious. I'll pay *** for her plane ticket for her to come back. Like, if that's an issue, if $200, $300 is an issue, I can definitely (indiscernible). Like, without a doubt.

> "We're talking about (indiscernible). This is substantial. But we're not ready. I have a number of things that I need to talk to my attorney about. And it has not been possible for me to do that. ***.

> "*****

> "THE COURT: But the case is going forward today. It's going to go forward today with [defense counsel], or it's going to go forward with you representing yourself. But those are the two choices. We're not going to postpone it.

> "*****

> "Your attorney, what you're saying is not consistent with my understanding, because he's filed a bunch of motions on your behalf. He's ready to go as far as that goes."

The case proceeded to trial, and defendant was convicted as described.

On appeal, defendant argues that the trial court erred in denying substitution of counsel because—as counsel himself admitted—counsel had not adequately met with defendant, had not completed his investigation, and was not prepared for trial. Moreover, insofar as the delay caused by a substitution could legitimately be balanced against the prejudice to the state or the complainant, defendant points out that he was facing considerable prison time, that the case was not particularly old, and that he was not personally at

fault for any delay. The state counters that the court permissibly denied the motion because it found "that defendant's primary reason for seeking new counsel was because he wanted a continuance," that a continuance would prejudice the complainant, and that his complaints about his counsel's preparation for trial were inconsistent with the court's observation that counsel had filed "a bunch of motions on [defendant's] behalf."

## ANALYSIS

"A defendant in a criminal case has a constitutional right to adequate counsel under the Sixth Amendment to the United States Constitution and Article I, section 11, of the Oregon Constitution." *State v. Funrue*, 339 Or App 427, 432, 568 P3d 1023 (2025). Trial courts have discretion in appointing substitute counsel, and we review substitution rulings for abuse of that discretion. *Id.* at 431-32.

Defendants do not have a right to court-appointed counsel of their own choosing. *Id.* at 432. "A simple loss of confidence or disagreement with counsel's approach to matters of strategy is not cause to substitute one appointed lawyer for another." *State v. Langley*, 314 Or 247, 258, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993). It is an abuse of discretion to deny substitution, however, when the defendant makes a "legitimate complaint" about their appointed counsel. *State v. Stanton*, 369 Or 707, 715, 511 P3d 1 (2022). A defendant has a "legitimate complaint" when appointed counsel's services are falling beneath the constitutional standard for adequate and effective assistance of counsel. *See Langley*, 314 Or at 258 (explaining that a "legitimate complaint" about counsel is one "based on an abridgement of a criminal defendant's constitutional right to counsel").

"[D]etermining the legitimacy of any complaint about appointed counsel is case—and fact—specific, and it leaves to the trial court the task of weighing whatever the defendant puts before that court in light of all the other known circumstances[.]" *State v. Smith*, 339 Or 515, 525, 123 P3d 261 (2005). In this case, we recognize from the outset that defendant's motion for substitution of counsel was inextricably intertwined with his motion for a continuance.

It is highly probable that defendant's concerns about counsel could have been largely or completely ameliorated if a continuance had been granted—and defendant suggested as much to the trial court. Nevertheless, at the time the trial court denied substitution, it had already denied a continuance.

In ruling on the substitution motion, the record before the court consisted of defense counsel's representations to the court—representations that the court "respect[ed] without question and accept[ed] without question"—and defendant's representations, which largely overlapped with or were corroborated by counsel's representations.[1] The gist of those representations was that defense counsel, who had been appointed almost exactly three months earlier, was not ready for trial, was still conducting necessary investigation, and had not yet met with defendant to discuss strategy, and that defendant had worked diligently with counsel's investigator and was not at fault for counsel needing more time. The question is whether the record that was made established a legitimate complaint regarding appointed counsel. We conclude that it did.

"The Oregon Constitution does not give a criminal defendant the right to a perfect defense, but 'it requires that the lawyer do those things reasonably necessary to diligently and conscientiously advance the defense.'" *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). "[T]he exercise of reasonable professional skill and judgment generally requires an investigation that is legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent the client in an informed manner." *Id.*; *accord Farmer v. Premo*, 363 Or 679, 699, 427 P3d 170 (2018) ("An appropriate consideration of the risks and benefits of a strategic decision requires a

---

[1] As described, the trial court credited defense counsel's representations to the court, including regarding his diligence, in explaining its ruling denying a continuance. Those representations were equally relevant to the motion for substitution of counsel. As for defendant's representations to the court, they largely aligned with counsel's, and the only negative comment that the court made was to remark that what defendant was saying was "not consistent with [the court's] understanding" insofar as defense counsel had "filed a bunch of motions on [defendant's] behalf" and was "ready to go as far as that goes." We therefore assume that the court discredited any suggestion that counsel had been inadequate with respect to pretrial motions. The only issue on appeal is whether defense counsel was adequately prepared for trial.

reasonably accurate and adequate consideration of the facts produced by an investigation." (Footnote omitted.)).

Here, defense counsel not only expressed a general lack of readiness for trial but specifically explained that he had not yet interviewed the codefendant, who had only recently agreed to speak with the defense. Although it is possible the codefendant might ultimately prove unhelpful, defendant was charged with a Class A felony, and defense counsel believed that the codefendant could be helpful to the defense. In that scenario, it is difficult to imagine how counsel could provide constitutionally adequate assistance without at least talking to the codefendant. *See Richardson v. Belleque*, 362 Or 236, 256, 406 P3d 1074 (2017) (explaining that tactical decisions must be based on "a reasonable investigation," unless counsel has a reason to think that an investigation would be "fruitless or even harmful" (internal quotation marks omitted)).

Moreover, in line with what defense counsel had said when arguing for a continuance, defendant reiterated in support of his substitution request that he and defense counsel had never met "outside of the courtroom," that they had not yet discussed a defense strategy, and that he needed to talk to counsel about a number of things before trial. Even if such statements on their own might not have constituted a "legitimate complaint" for substitution purposes due to lack of detail, they contributed something to the existence of a "legitimate complaint." *See Mitchell v. Mason*, 325 F3d 732, 747 (6th Cir 2003) ("[T]here are no conceivable tactical or strategic reasons for defense counsel to fail to consult with a client prior to trial. Such a meeting is vital if counsel is competently to develop a defense.").

Under the circumstances, defendant established a legitimate complaint regarding his court-appointed counsel that made it an abuse of discretion to deny substitution.

We note that, in denying substitution, the trial court did not take a position on whether defendant had a legitimate complaint regarding counsel but, instead, largely relied on its denial of the motion for continuance. The court had denied a continuance after balancing the uncertain

benefit to defendant of further investigation against the certain burden on the complainant of appearing for a different trial date. Then, in denying the request for substitution, the court focused on its decision to keep the existing trial date and the fact that defendant's existing counsel was the only one who could possibly represent him that day. But that was an impermissible basis to deny substitution of counsel. Having been presented with a legitimate complaint regarding appointed counsel, the court did not have discretion to require defendant to proceed to trial with constitutionally inadequate assistance of counsel. It is true that, had the court granted a continuance, defendant likely would not have moved to substitute counsel and likely would not have been entitled to substitute counsel, because existing counsel would then have had sufficient time to prepare for trial and provide constitutionally adequate assistance. It does not follow, however, that having denied a continuance, the court could deny substitution of counsel. Defendant's constitutional right to adequate representation of counsel necessarily trumped the existing trial schedule.

Reversed and remanded.